·(11 Misc. Rep. 192.)

O'CONNOR v. GERMANIA LIFE INS. CO.

(Supreme Court, Special Term, Erie County.    January, 1895.)

INSURANCE—LAPSE OF POLICY—RIGHT TO PAID-UP POLICY.
    Where the holder of a life insurance policy offered to surrender it to the agent from whom he procured it in order to obtain a paid-up policy as provided therein, and the agent took no action in the matter, and did not inform the policy holder as to the proper procedure until the time prescribed for obtaining the paid-up policy had expired, and the policy holder's only knowledge of the insurance company was what he obtained from the agent, the issuance of such paid-up policy will be compelled.

Action by John O'Connor against the Germania Life Insurance Company to compel defendant to issue to plaintiff a paid-up policy. Judgment for plaintiff.

Herbert P. Bissell and Martin Cary, for plaintiff.
Adelbert Moot, for defendant.

WARD, J. In December, 1888, the defendant issued its policy insuring the life of the plaintiff to the amount of $15,000, at an annual premium of $594.60. The policy contained this provision:

"It is also agreed that if this policy shall, after three or more whole years' premiums shall have been paid, become void by nonpayment of premiums, the company will, on due surrender of this policy and all additions thereto, if

such surrender shall be made within six months after this policy shall have thus become void, issue a nonparticipating policy of paid-up insurance, payable at the same time and under the same conditions as this policy, for the amount prescribed by the law of the state of New York."

The plaintiff made three payments upon the policy, the last of which was made December 22, 1890, which extended the policy for another year. Shortly after he had made the last payment, he met Mr. Rohr, the agent of the company, and told him, in effect, that he did not intend to make any more payments upon the policy, but would let it lapse, and within the six months provided he would take a paid-up policy. After the time for making the next payment (December 22, 1891), and within the six months, the plaintiff had an interview with the agent at his office, and he stated to the agent that he had come to surrender the policy, and asked him for a paid-up policy. The agent said he had none, and the plaintiff's evidence discloses that:

"I asked him when he would have any. He didn't say when. I asked him if he would give me any at all, and he didn't say 'Yes' or 'No.' He asked me for my policy, and I said: 'Here it is in my pocket. I am ready to surrender it when you give me something in return for it.' Q. Did he offer to give you a receipt for it or anything? A. No, sir; he did not. If he had given me a receipt for it, I would have given it to him."

The witness further stated that no blanks were sent him to be filled out to surrender the policy, nor was he asked to fill out or sign any blanks for the surrender of the policy or otherwise. After the six months had expired, and before the action was brought, the plaintiff asked the agent what he had done about procuring him a paid-up policy. The agent said he had done nothing; that he had not got the policy back. Two or three conversations occurred between the plaintiff and the agent of about the same import as the one quoted above, before the six months expired, and with the same result. The defendant never issued to the plaintiff the nonparticipating policy of paid-up insurance, and this action was brought to compel the company to issue it, the plaintiff claiming that he was ready and willing to surrender the first policy, with all additions thereto, upon the receipt of the new one. The company defends principally upon two grounds: First. That the agent Rohr had no authority to receive notice of the intention to surrender or the surrender of the policy, and to issue a new one, or take any action in relation thereto, but had simply the power to receive the old policy and the additions from the plaintiff, forward them to the company, and to await their action. Second. That the plaintiff had neither surrendered within the time prescribed (of six months) the policy, or offered to do so, or tendered the same, and that the payments made by plaintiff were forfeited; the unconditional surrender within the six months of the policy being a condition precedent to be performed by the plaintiff before he was entitled to a paid-up policy.

As to the first objection, I have reached the conclusion from the evidence that it is not well taken. The office and place of business of the defendant was in New York City. The plaintiff resided in the city of Buffalo. Mr. Rohr, assuming to be the agent of the

company, solicited the insurance of the plaintiff, who made due application therefor, and Rohr delivered to him the policy. Rohr had an office on Main street, where he transacted insurance business, and each payment of premium was made either to Rohr himself or at his office, and renewal receipts of the policy received by the plaintiff were received from Rohr or at his office, from the person in charge thereof, to Rohr's knowledge. A letter was received by the plaintiff from the defendant, with a card upon the envelope as follows: "Matthias Rohr, Manager Germania Life Insurance Company, New York." There is no doubt but what Rohr assumed to act as manager for the company at Buffalo, and held himself out to the public as such, and from the whole evidence I think it is fair to assume it was with the knowledge and consent of the company. It is true Mr. Rohr testifies that, as a matter of fact, he did not have the power ascribed to him by the plaintiff, and states particularly what his duties were as between himself and the company. It does not seem, however, that the plaintiff had any notice of any limitation upon his powers, or that he had less power than he held himself out to possess.

The serious question in this case grows out of the second objection. This is an action in equity, and the question is whether equitable relief can be granted the plaintiff under the circumstances of this case. It is conceded that he has paid about $1,800 to the defendant, and had proper surrender of his policy been made, or a proper offer to surrender within the six months within which he was permitted to do so, he would have been entitled to a paid-up policy, under the provisions of his contract, as a matter of absolute right. By reason of the lapse of time and the failure, as the defendant claims, to make the proper surrender, this right was lost, and the defendant absorbs the money of the plaintiff as a forfeiture. It is a familiar rule that equity relieves as against penalties and forfeitures. No better illustration of this can be found than the relief frequently given to vendees of real estate whose contracts provide that, if they are in default of payment, the contract shall be void, and the vendor can re-enter and take possession of the lands contracted to be sold. It is true that at law the proposition is often asserted that performance of a condition precedent is indispensable to a recovery upon the contract where damages are sought, and the tender of performance must be without condition or reservation; but in the forum of conscience and equity this strict rule of the common law has been often softened and relieved against where justice and equity require it. It would seem that fair dealing would require the company, after repeated notice from the plaintiff, who was not familiar with their mode of doing business, that he desired the paid-up policy, and was ready to surrender his policy upon receiving it or some recognition from them of his right, to have pointed out to the plaintiff how he should proceed to obtain the paid-up policy, what kind of an application he should make, what paper he should execute, and, in short, the mode of procedure the company required under the circumstances. The plaintiff knew nothing of the company except what he had learn-

ed through his dealings with it in this transaction, and that had been through the agent, Mr. Rohr; and, when he goes into Rohr's office with his policy ready to deliver, he had a right to expect such information and instruction as the agent could give to carry out the purpose of the visit. But the agent does nothing of the kind; he simply requires the policy to be delivered to him, without promising to take any steps to obtain a new one, or that a new one should be issued to the plaintiff, and in fact, by his words and conduct, refused to give the plaintiff any information or guaranty that, if he surrendered his policy, his rights should be protected. If the conduct of the plaintiff under the circumstances did not strictly, at law, put him in a position to secure the new policy, it was at least such that would occur to a prudent business man, perhaps unacquainted with the business in hand. In addition to the jurisdiction given a court of equity in this case growing out of the forfeiture, it may be said that this case has elements of mistake and surprise as well. Time, ordinarily, in insurance contracts, is of the essence of the same; but it is not perceived how the delay in this case that has been occasioned since the expiration of the six months has worked injury to the defendant. It has lost nothing by the delay.

I have reached the conclusion that the plaintiff is entitled to the relief sought in this action, and also to recover costs, and judgment should be entered accordingly.

Judgment for plaintiff, with costs.